UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NANCY JAMES and**<br>**JILL WITTMAN,**<br>individually and on behalf of themselves<br>and all others similarly situated, | Case No.: 2:19-cv-3246 |
| | **Jury Trial Demanded** |
| Plaintiffs, | |
| v. | |
| **SHARP ELECTRONICS**<br>**CORPORATION,** | |
| Defendant. | |

**COMPLAINT**
**With Class Action Allegations**

1.      Sharp is one of the largest technology companies in the world. It designs,

manufactures, and sells a variety of technological products, including kitchen appliances such as

microwaves.

2.      Sharp's kitchen appliance portfolio includes multiple different types of

microwaves, including microwave drawers (the "Microwaves" or the "Products"), which are

the subject of this action. On its website, Sharp boasts that it "has been innovating microwave

cooking for decades and holds 11 patents on the Microwave Drawer platform alone. Engineered

for consistency and built with the finest quality materials, great cooks trust the Microwave

Drawer to deliver great results every time."[1] Over the course of several decades, Sharp has

---

[1] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawer.aspx
(last accessed Mar. 12, 2019).

gained the trust of consumers, who reasonably believe that Sharp products are made with quality materials, and that the Sharp products can be used safely, as intended.

3.     Microwave drawers, as described by Sharp, "offer[] flexible placement options so you can focus on the design elements you prefer by maximizing sight-lines and enabling more design versatility than typical built-in, over-the-range or countertop microwaves."[2]

4.     Sharp's microwave drawers are intended by Sharp to be installed within cabinets, under countertops, or adjacent to wall ovens.[3]

5.     Sharp has offered six models of its microwave drawers, and currently offers five of those six: SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS (collectively, the "Microwaves"). The design and manufacture of these Microwaves are substantially similar, each model contains the defect, and each model is subject of this class action lawsuit.

6.     The price of the Microwaves is between $1,000.00 and $1,700.00. They are sold as a premium product and are designed and advertised to be installed within custom cabinetry.

7.     The Microwaves all contain a defect, described more fully *infra*, that makes  them unreasonably dangerous, as various components are subjected to uncontrolled electromagnetic energy, overheating, are susceptible to catching fire, and unsuitable for their intended use.  More specifically, the  Microwaves are defectively designed and/or manufactured such that, under normal and intended use, the electromagnetic waves generated by the magnetron tube are

---

[2] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawerDark.aspx (last accessed Mar. 12, 2019).

[3] http://files.sharpusa.com/Downloads/ForHome/HomeAppliances/MicrowaveOvens/BuildersGuides/2017-Builders%20Guide_3-20-17.pdf (last accessed Mar. 12, 2019).

obstructed while moving down the waveguide channel into the cooking cavity, resulting in a buzzing noise from electrical arcing, overheating, smoking and eventual destruction of the magnetron, leading to scorching of the waveguide.

8.      Accordingly, the Microwaves are unreasonably dangerous and not fit for household use.

9.      The manifestation of the defect and damage to the Microwaves are not a result of overcooking or prolonged heating by the owner. It can take less than 30 seconds for the electromagnetic energy to be obstructed, arc and overheat the magnetron tube, waveguide, and scorch the back panel of the Microwaves, produce smoke, and fail altogether.

10.      Sharp has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at concealing the Microwave defect from its consumers and the Plaintiffs, both at the time of purchase and during post-sale communications.

11.      At all relevant times, Sharp knew or should have known about the defect but nevertheless marketed, advertised, and sold the Microwaves without warning consumers that the Microwaves are likely to fail as described herein.

12.      Indeed, rather than providing consumers with new, non-defective Microwaves after their Microwaves overheated, Sharp either replaced each defective Microwave with one or more defective Microwaves, improperly denied the warranty claim, and/or forced the consumer to sign a waiver or buy an extended warranty as a remedy. Sharp failed to disclose the known defect or provide the customer with a non-defective replacement product.

13. The replacement Microwaves also fail, or are likely to fail in the same manner, leaving consumers fearful of additional smoke and fire caused by the Microwaves, and to contend with Microwaves that do not function as intended.

14. As a direct and proximate result of Sharp's concealment of the defect, its failure to warn customers about the defect before their purchase of the Microwaves, and its failure to recall the Product or remedy the defect, Plaintiffs and other similarly situated customers ("Class" or "Class Members") purchased and used Sharp's defective Microwaves when they otherwise would not have made such purchases or would not have paid as much for the defective Microwaves.

15. Plaintiffs' and putative Class Members' Microwaves have failed (or are likely to fail) as a result of the defect when Plaintiffs and Class Members use the Products as intended, resulting in damage to the Microwaves and other property, including smoke damage to cabinetry, kitchen islands, and peninsulas, and other interior parts of their homes, and the loss of meals prepared in the Microwaves.

16. Plaintiffs' and all putative Class Members' Microwaves contain the same defect at the point of sale, pose substantially the same safety risk to Plaintiffs, Class Members, consumers, and the public. Sharp's Microwaves cannot be used safely for their intended purpose of preparing meals at home.

## PARTIES

17. Plaintiff James is a resident and citizen of Columbus, Franklin County, Ohio.

18. Plaintiff Wittman owns a home in Cincinnati, Hamilton County, Ohio where the Microwave is installed.

4

19.     Defendant Sharp Electronics Corporation is a New York corporation with its principal place of business located in Montvale, New Jersey.

20.     Sharp distributes and markets and directs the marketing of the Microwaves in Ohio and throughout the United States.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named or unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiffs and Defendant are citizens of different States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sales of products in this District, and has engaged in the unlawful practices described in this Complaint in this District.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

24.     Microwave ovens have been ubiquitous in American kitchens for several decades. Consumers have become accustomed to the simplicity and quick cooking that microwave ovens provide, and rely on manufacturers, including Sharp, to ensure their safe and efficient use.

25.     Sharp is a household name, and one in which consumers have relied on for the safety and quality of microwave ovens for more than 40 years. Sharp introduced the first microwave oven with a turntable in the 1960s, and in the late 1970s, Sharp introduced low-cost microwave ovens for residential use.[4]

26.     Upon information and belief, Sharp was the first to design, patent, and manufacture microwave drawers. In fact, Sharp owns the trademark for the term "Microwave Drawer."[5]

27.     Sharp is engaged in the business of designing, manufacturing, warranting, marketing, advertising, distributing, and selling the Microwaves. Each of the Microwaves is branded with the "Sharp" logo or, upon information and belief, can be readily identified as being a Sharp designed, manufactured, and distributed product.

28.     The Microwaves are used, and are intended by Sharp to be used, for safe food preparation.

29.     Microwaves are high voltage appliances that are a considerable electrical hazard if they are defectively designed and/or manufactured.

30.     Each Microwave contains a magnetron, which is powered by a high voltage transformer, generating the electromagnetic energy waves ("electromagnetic energy" or "waves") in the Microwaves. The magnetron is a vacuum tube device that generates the energy needed to heat food within the microwave. In other words, when a consumer cooks food in a

---

[4] http://www.sharpusa.com/AboutSharp/CompanyProfile/SharpAndTechnologyHistory.aspx (last accessed Mar. 12, 2019)

[5] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawer.aspx (last accessed Mar. 12, 2019).

6

microwave oven, the magnetron takes electricity from the power outlet and converts it into high-powered radio waves that are transmitted down a waveguide.

31.     The waveguide directs the radio waves generated by the magnetron from one end of the waveguide to the other end and into the cooking cavity. The waves enter the cooking cavity and are directed and distributed throughout the cooking cavity by a mode stirrer. The purpose of the mode stirrer is to ensure the waves are distributed throughout the cooking cavity so that the food is evenly cooked. A mode stirrer is utilized in microwaves that do not have a carousel to evenly heat the food.

32.     Each of the Sharp-branded Microwaves contains a defect that prevents the waves from properly moving through the waveguide into the cooking cavity. More specifically, the electromagnetic energy that originates from the magnetron tube becomes obstructed or disturbed while moving through the waveguide. This obstruction or disturbance prevents a substantial portion of the energy from being properly guided into the cooking cavity.

33.      The obstruction or disturbance in the electromagnetic energy's movement down the waveguide causes the energy that is not transmitted to the cooking cavity to become uncontrolled, arc and concentrate near the magnetron, burning the waveguide and causing the magnetron tube to overheat. As a result of the overheating, the magnetron tube anode terminal (the top of the magnetron tube) melts and the waveguide is scorched.

34.     Expert investigation has revealed evidence of a localized hot spot on the waveguide, which was observed several inches from the magnetron during normal operation.

35.    The hot spot is consistent with a faulty design and manufacture by Sharp, in which the magnetron, the waveguide, and its load (the food) are not properly matched to one another in size and/or ratio, resulting in premature failure of the magnetron tube.

36.    Customers' experience and technicians' reports, including burn patterns in the Microwaves, are consistent with premature failure of the magnetron and an increased Voltage Standing Wave Ratio ("VSWR").

37.    Waveguide problems, such as localized energy disturbances, are consistent with an increased VSWR. The manufacturer's data sheets for magnetron tubes indicate that an increase in VSWR reduces magnetron life.

38.    Further, the Microwaves are designed and marketed as having 950 watts cooking capacity. In fact, Sharp highlights this wattage capacity in the Microwaves' description, on specification sheets, and other product literature and advertisements. However, due to the obstruction or disturbance in the transmission of the energy to the cooking cavity, the Microwaves operate at a maximum of only 750 watts.

39.    While microwave drawers have only been on the market for approximately 20 years, successful alternative designs and manufacture for the manufacture of microwaves that utilize magnetron/waveguide/mode stirrer technology have existed since the 1970s.

40.    The Microwaves also lack an appropriate safety mechanism to prevent the magnetron from overheating and causing smoke, burning, and premature failure.

41.    Sharp expressly and impliedly warranted, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Microwaves are fit for the ordinary purpose for which such goods are sold.

42.    Sharp further represents that the Microwaves:

"SHARP ELECTRONICS CORPORATION warrants to the first consumer purchaser that this Sharp brand product (the "Product"), when shipped in its original container, will be free from defective workmanship and materials"

"Cooking Performance You Can Trust"

"COOKING PERFORMANCE FROM ONE OF THE MOST TRUSTED BRANDS IN MICROWAVES"

"Sharp has been innovating microwave cooking for decades and holds eleven patents on the Microwave Drawer alone. You can trust that the Microwave Drawer will deliver the performance you need because it is engineered for great cooking results and is built with the finest quality materials."

The Microwaves operate at "950 watts."

"Sharp has been innovating microwave cooking for decades and holds 11 patents on the Microwave Drawer platform alone. Engineered for consistency and built with the finest quality materials, great cooks trust the Microwave Drawer to deliver great results every time."

"The Sharp Microwave Drawer Oven has been designed to complement the widest range of kitchen styles and appliances. The sleek low profile design and a stainless steel finish beautifully compliment any kitchen."

43.    These representations are material to the purchase of the Microwaves, and are intended to, and did induce Plaintiffs, consumers, and their agents (e.g. contractors) to purchase the Microwaves.

44.    Sharp expressly warrants in its user manuals that the Microwaves are free from defects in workmanship and materials.

45.    Sharp's Warranty further provides:

One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the

Product for parts only; labor and service are not provided free of charge for this additional period.

46.     However, the Warranty fails of its essential purpose for the following reasons:

(a)     Defendant knew the Microwaves were defective at the time of sale; however, the defect is latent and often doesn't manifest until after the expiration of the one (1) year parts and labor warranty;

(b)     Sharp consistently fails to investigate whether there is a failure of the magnetron implicating the five (5) year warranty, and instead denies warranty claims as being outside of the one (1) year warranty;

(c)     Microwaves that are replaced under the terms of the Warranty are also replaced with similarly defective Microwaves;

(d)     Sharp often attempts to force consumers into purchasing an extended Warranty when the defect manifests outside of the one (1) year Warranty, without regard to whether the magnetron has failed within the five (5) year Warranty; and

(e)     Sharp attempts to force consumers into signing releases and waivers without acknowledging their right to consult independent counsel before signing.

47.     Further, the Warranty is unconscionable in its time limitations given the latent nature of the defect; disclaimer of warranties; and limitation of remedies. The Warranty is further unconscionable given Sharp's knowledge of the defect and resulting premature failure of the Microwaves prior to the sale of the Microwaves with the Warranty.

48.     The defect renders the Microwaves unfit for the ordinary purpose for which they are intended.

49.     As a result of the defect, the Microwaves pose an unreasonable risk of harm to consumers and their property.

50.     Had Plaintiffs, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Microwaves.

51.    As a direct, proximate, and foreseeable result of the defect, Plaintiffs and Class Members suffered damages, including but not limited to: (a) the difference in value of the Microwaves as warranted and the Microwaves received; (b) loss of use of the Microwaves; (c) property damage; and (d) consequential damage.

## PLAINTIFFS' FACTS

*Plaintiff Nancy James*

52.    In early 2015, Plaintiff James' contractor purchased a Sharp-branded Microwave Oven Drawer, Model Number SMD2470AS from Jack's Appliances in Ohio. Upon information and belief, Plaintiff's contractor purchased the Microwave based on the representations by Sharp, including *inter alia*, the Microwave specifications, and the representations regarding quality and design aesthetics. The current retail price of this model of the Microwaves is $999.00-$1344.00.

53.    The Microwave was delivered and installed in Plaintiff's kitchen cabinetry shortly after purchase, and she began to use the Microwave as it was intended to be used. From the time of purchase until the incidents described below, Plaintiff used the original Microwave and replacements as intended, cleaning them appropriately, and maintaining them in a reasonable manner as an owner of an appliance.

54.    In September of 2018, Plaintiff James was using the Microwave to heat food when it began making screeching and popping sounds, followed by billowing smoke and a lingering burning electrical smell. In that moment, Plaintiff James believed the Microwave was about to catch on fire and immediately turned it off. Given the contamination of the cooking cavity, the Plaintiff was forced to discard her food.

11

55.     Plaintiff initially contacted an appliance repairman; however, the repairman stated they do not work on Sharp and directed her to Sharp's website. Plaintiff contacted Sharp and had an online chat, wherein the Sharp representative stated the Microwave was out of warranty and offered Plaintiff the names of three (3) repair contractors. Sharp did not send any technician to investigate the problem, did not disclose that the magnetron has a longer 5-year warranty, and failed to disclose its knowledge of the defects and widespread problems with the Microwaves.

56.     Plaintiff had to purchase a toaster oven to heat the meals she would have otherwise prepared in her Microwave.

57.     Upon information and belief, Plaintiff's Microwaves were frequently operating far below 950 watts.

58.     As the Microwave is built-in to the cabinetry, Plaintiff is unable to investigate the extent of any smoke damage without destructive removal of cabinetry components by a contractor; however, given the amount of smoke that was emitted by the Microwaves, it is more likely than not that there is smoke damage to cabinetry and surrounding kitchen components.

*Plaintiff Jill Wittman*

59.     In August of 2015, Plaintiff Wittman and her husband purchased a Sharp-branded Microwave Oven Drawer, Model Number KB6524PS, from Hagedorn Appliances in Northern Kentucky. Plaintiff and her husband selected the Microwave because it was represented to be the best technology and what is used in modern, high-end kitchens. The current retail price of this model of the Microwaves is $800.00-$1054.00.

60.     As the Microwave was required to be built-into cabinetry, Plaintiff's entire kitchen island was designed and built around the Microwave. Plaintiff and her husband began to use the Microwave as it was intended to be used. From the time of purchase until the incidents described

below, Plaintiff used the original Microwave and replacements as intended, cleaning them appropriately, and maintaining them in a reasonable manner as an owner of an appliance.

61.     Shortly after installation, Plaintiff noticed a buzzing noise when the Microwave was in use. Although the noise stopped after the initial occurrence, it began to occur again sporadically during use. Plaintiff contacted Sharp while the Microwave was still under warranty for repair, and a technician was sent to the home. The technician was unable to recreate the noise and left without further investigation, repair, or replacement.

62.     In or around November of 2017, Plaintiff was heating food when the buzzing noise occurred again; however, it was followed by smoke that began pouring out of the Microwave and from the kitchen island where it was installed. Plaintiff immediately stopped using the Microwave, and given the contamination of the cooking cavity, the Plaintiff was forced to discard her food. Plaintiff contacted Sharp, who informed her she would need to pay a fee for a new replacement Microwave because her current Microwave was now out of warranty.

63.     As a result of Sharp's denial of Plaintiff's warranty claim, its failure to disclose its knowledge of defects, and the necessity of replacing the Microwave into her custom cabinetry, Plaintiff paid a fee of approximately $95 for the replacement Microwave.

64.     In February of 2018, Plaintiff was using her first replacement Microwave to heat food. The Microwave began making the same buzzing noise like that which was emitted by the original Microwave. Plaintiff immediately stopped using the Microwave given the likelihood the noise would be followed by smoke. Plaintiff contacted Sharp, who replaced the Microwave with another new Sharp-branded Microwave Oven Drawer.

65.    Two (2) to three (3) more replacements failed thereafter in the same manner, including inn June of 2018 and July of 2018. Each time, Plaintiff contacted Sharp and received more replacement Sharp-branded Microwave Oven Drawers.

66.    In September of 2018, the third or fourth replacement failed in the same manner. When Plaintiff contacted Sharp, she was told that she could receive a new replacement if she signed a "Resolve Letter."  In a September 28, 2019 email from Sharp's "Customer Service Experience Escalations Service and Solutions Group," Plaintiff was told that "[O]nce Sharp receives the signed resolve letter, exchange will be processed for your replacement microwave. The new unit will carry a 1-year warranty upon date of delivery."

67.    The Resolve Letter, also dated September 28, 2019, stated in part:

> Pursuant to our conversation on 9/28/2018, it has been agreed upon to replace your Sharp KB6524PSYB, serial number 515845, with a new model KB6524PSYB in exchange for the return of your original KB6524PSYB to Sharp for credit.
>
> In consideration of this information, you relieve Sharp Electronics Corporation from any other claim or controversy whatsoever arising out of an alleged malfunction of KB6524PSYB, serial number 515845.

The email and the Resolve Letter directed Plaintiff to sign and return it via fax or to sharpresolveletters@sharpsec.com.

68.    Despite an obvious attempt to persuade Plaintiff to waive all legal rights and claims associated with the defective Microwave, Sharp never advised Plaintiff that she had the opportunity to seek independent legal advice or could negotiate the terms of the Resolve Letter. Although the email stated that Plaintiff would have to sign the Letter in exchange for the new Microwave, Plaintiff refused to sign the letter and still received another replacement Microwave.

69.     On each occasion that a Microwave failed, Sharp represented to Plaintiff that the "design issue" had been fixed in an effort to induce Plaintiff to accept replacement Microwaves. Based on Sharp's representations and as Plaintiff's kitchen island was custom designed and built around the Microwave Drawer, she continued to accept replacements.[6]

70.     Plaintiff's fourth or fifth replacement Microwave Drawer again failed in the same manner as the prior Microwaves. As Plaintiff no longer had faith that Sharp had fixed the defect with the Microwave, Plaintiff decided to remove and store the Microwave Drawer. Plaintiff purchased a countertop microwave for $88.20. Given that the kitchen island was custom built for the Microwave Drawer, Plaintiff and her husband spent approximately $400 for cabinet doors to cover the empty cavity where the Microwave Drawer had been located.

71.     As the Microwave is built-in to the cabinetry, Plaintiff is unable to investigate the extent of any smoke damage without destructive removal of cabinetry components by a contractor; however, given the amount of smoke that was emitted by the Microwaves, it is more likely than not that there is smoke damage to cabinetry and surrounding kitchen components.

72.     During one of the latter replacements, Sharp's technicians caused damage to the cabinetry finish from the tools used to complete the replacement.

73.     Upon information and belief, Plaintiff's Microwaves were frequently operating far below 950 watts.

74.     Although Sharp was aware that the Microwaves were defective from the numerous other complaints of the same failure, it failed to disclose its knowledge when it sold Plaintiff a

---

[6] While other "brands" of microwave drawers exist, they are all also manufactured by Sharp and are the subject of complaints identical to those reported in the Sharp-Branded Microwave Oven Drawers.

new replacement Microwave, when it provided numerous replacement Microwaves, or when it attempted to force Plaintiff into signing a waiver of her legal rights and claims.

75.     Because  Sharp fraudulently concealed the defect from her at the time of purchase of the original and first replacement Microwave, during warranty calls, as well as misrepresenting that the issue had been fixed, Plaintiff did not have knowledge of the defect and could not have known of the defect as she is not an electrical engineer, and was relying on Sharp as the manufacturer of the Microwaves.

76.     Plaintiff's original Microwave and numerous replacement Microwaves did not operate safely for their life expectancy. Had Plaintiff known of the defect, she would have either not purchased the Microwaves, she would not have had them installed into her cabinetry, or would have paid less than she did for the Microwave. Therefore, she did not receive the benefit of her bargain.

## SHARP'S ACTUAL OR
## CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

77.     Sharp knew or should have known when it sold the Microwaves to the public that the Microwaves suffered from the defect, and that the defect caused the Microwaves to function improperly during their expected useful life, represented an unreasonable risk that the Microwaves' components would overheat, and could result in significant personal injury and/or property damage to consumers and the public.

78.     Sharp's knowledge of these facts is established through consumer complaints, including several years of public Internet posts complaining that the Microwaves failed during normal use, and warranty claims. Despite its knowledge, Sharp did not remedy or eliminate the defect in the Microwaves or remove them from the stream of commerce.

79. Instead, Sharp replaced the defective Microwaves with equally defective Microwaves, improperly denied warranty claims, and often tried to force consumers into signing releases and waivers of their rights if the consumer sought relief from the manufacturer.

80. Sharp further represented to consumers, including Plaintiff Wittman, that the known problems with the Microwave were fixed in an effort to induce them to accept or purchase equally defective replacement Microwaves.

81. Although the problem with the Microwaves was known to Sharp, Sharp also represented to many consumers that it was unaware of any Microwaves that had caught fire, and therefore the defect did not pose a safety problem.

82. Sharp's actual knowledge of the defect is evidenced by its responses to consumer complaints submitted to https://www.saferproducts.gov, cited *infra*, wherein Sharp continues to attempt to discredit reports of the defect in the Microwaves.

83. Customer complaints are also available online regarding the Microwaves, some dating to 2015. For example, in March of 2015, one consumer reported a problem with Model KB6524PS:[7]

> We were using the microwave to make popcorn. The bag had been the microwave maybe 30 seconds and a horrible noise come from the microwave -- a little smoke starts to come out. Thought it was the popcorn -- but bag was completely flat with no burn marks. Took the popcorn out and turned on the microwave with nothing in it -- terrible noise again and smoke came pouring out from under the control panel....stop microwave after only a few seconds...grabbed fire extinguisher. If I had not been in the room there would have been a fire.

---

[7] https://www.saferproducts.gov/ViewIncident/1470348 (last accessed June 26, 2019).

84.     Another consumer reported having the same problem with the same model in

August of 2016:[8]

> I want Sharp to acknowledge and provide support for all consumers claiming any sparks, melting or smoke with these microwaves- apparently this is frequent and needs to be addressed in order to prevent death or harm to children and adults. I would also like a full reimbursement to re-purchase a microwave that is not a fire-hazard for my family, a new replacement of the existing microwave, or a different microwave that will not pose any safety risks to my children and will fit in the kitchen cabinet built specifically for this model. Sharp needs to be held accountable and stand up for their name and products. They should not wait for a fatality or lawsuit to stop them from concealing consumers complaints of a safety hazard in their homes and knowingly misguiding consumers.

85.     Another consumer reported the same problem in July of 2017:[9]

> Sharp Microwave oven model KB6524PS caused much smoke during normal use. The unit is 3 years old and I had called Sharp within 4 months of purchasing to report loud humming that would happen randomly. I was advised that this happens from time to time and that it was normal and not a warrantable condition.
>
> The noise has been becoming more frequent and recently the noise is present with smoke now that fills my kitchen. I called the help line and they said that this happens from time to time and that it is not something to worry about.

86.     In May of 2016, another consumer noted:[10]

> We own two Sharp Microwave Drawers - model smd2470AS. Both were manufactured in September 2015, installed in a new home in January 2016 and not used until we moved in in March 2016. Each unit is on its own independent electrical circuit, with no other appliances on either circuit.
>
> On Saturday, May 7th around noon, while cooking a sausage, one of the units (serial number 128968) had an electrical "event" -

---

[8] https://www.saferproducts.gov/ViewIncident/1581834 (last accessed Dec. 27, 2018).

[9] https://www.saferproducts.gov/ViewIncident/1664034 (last accessed Dec. 27, 2018).

[10] https://www.saferproducts.gov/ViewIncident/1571856 (last accessed Dec. 27, 2018).

significant smoke pouring out of the unit accompanied by loud cracking electrical noise. The circuit breaker did not trip. I called Sharp immediately and reported this event (Sharp case number [REDACTED]). As it was a Saturday, the[y] asked that I call back on Monday.

On Sunday, May 8th, while i was using the other unit (serial number 128862) to cook a potato, it also had an identical electrical "event" - significant smoke pouring out of the unit accompanied by loud cracking electrical noise. Again, the circuit breaker did not trip. On Monday, May 9th I called Sharp and added this information (Sharp case number [REDACTED]).

I told the Sharp personnel that had I not been in the kitchen there could have been a major, house-threatening electrical fire. I offered to have them remove the units to analyze what is happening. The Sharp "Safety Department" seems not to be interested in this.

87.    Sharp's response to numerous customer complaints demonstrate that not only is Sharp aware of the dangerous and potentially harmful defect, it attempts to actively conceal the dangerous defect from consumers by claiming, for example, that the problems are not safety hazards because the arcing is contained in the Microwave, or that the signs of the defect are caused by things other than a defect, including loose AC connections.[11]

88.    Similarly, numerous Amazon reviewers reported the same problems. In fact, 33% of the reviewers gave the SMD2470AS just one (1) star, in part due to the premature failure flowing from the defect. For example, on an Amazon page selling the Microwave one consumer noted:[12]

Why is Amazon still selling this Microwave on their website with the significant problems reported? All you need to do is look at the feedback with a rating of 1 and you can see there is a manufacturing defect. This Microwave is just 6 months installed and it melted down like Chernobyl.....sounded more like a garbage disposal then

---

[11] *See* fns. 6-9.

[12] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/dp/B00U6YFOZ6?th=1 (last accessed Dec. 27, 2018).

a microwave. Smoke started pouring out of the unit and got so hot I can't believe it didn't start a fire.... Very concerned based on what others have noted that replacing this unit under warranty still results in same issues and this problem has not been addressed by Sharp. I have to imag[in]e it won't be long before someone decides to start a Class Action lawsuit, or there is a major recall.

89.    By July of 2016, if not earlier, consumers were reporting fears of fire and failures

with replacement Microwaves:[13]

> ROUND ONE: We've had this microwave for 2 months. Today it started smoking, and not the food, but the actual microwave. It smelled electrical. I'm awaiting word from Sharp on how to handle. Not too happy.
>
> After a service call (the first repair company was a no-show, so add yet another week to get a second company out) this was unfixable and a replacement unit was approved and shipped. After going 4 weeks without a microwave, we were excited to have it working again.
>
> ROUND TWO: TWO DAYS AFTER DELIVERY (right around Labor Day 2016) the SAME THING HAPPENED. Smoke in the house after reheating some coffee. They sent another technician, it was unfixable, and a THIRD unit was approved and delivered.
>
> ROUND 3: February 24th 2017: This time the microwave has simply stopped heating anything. Customer Service was called and a technician has been scheduled for 3/1. The technician was anther no-show. Another technician has been scheduled, add yet another week.
>
> IN SUMMARY - SAVE YOURSELF AND DO NOT BUY THIS MICROWAVE!

---

[13] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (last accessed June 26, 2019).

90.     By August 2016, if not earlier, consumers were reporting that Sharp technicians were acknowledging the company's awareness of the problems with the Microwaves:[14]

> DO NOT BUY THIS PRODUCT - A DEFECTIVE UNIT - GOOGLE THIS MODEL AND YOU WILL ALSO SEE MULTIPLE COMPLAINTS.
>
> I BOUGHT THIS UNIT AND USED IT ONLY A WEEK BEFORE IT HAD PROBLEMS. I WAS HEATING MY TEA WHEN IT BEGAN TO MAKE A STRANGE NOISE, I OPEN UP THE DRAWER AND I COULD SEE WHITE SMOKE AND SMELL SOMETHING BURNING. THE SERVICE MAN SAID HE HAS SEEN THIS SAME PROBLEM SEVERAL TIMES IN THIS MODEL. HE SAID THE MODEL MOTOR QUITS TURNING AND IT STARTS TO BURN A HOLE IN THE CAVITY. HE SENT PICTURES TO SHARP AND TOLD ME THAE WOULD SEND A REPLACEMENT. I CALLED SHARP AND EXPLAINED BECAUSE OF A FIRE HAZARD I DID NOT WANT A REPLACEMENT- I WANTED A REFUND. THEY TOLD ME THEY COULD NOT REIMBURSE ME BECAUSE OF WARRANTY. I PURCHASED THE UNIT ON NOV. 2015 BUT BECAUSE I WAS REMODELING MY HOME - I JUST HAD THE UNIT INSTALLED AND HAD JUST STARTED USING IT. AT SOME POINT THEY WILL HAVE A LAWSUIT ON THERE HANDS. THEY NEED TO RECALL THIS MODEL.

91.     Another consumer reported as follows:[15]

> After one week of use we heard buzzing sound and there was lots of smoke. Took one week to get repair person here, see photos of burnt area under the chassis frame. Product has a defect that causes the painted area to burn. Repairman indicated mine was the third unit he had seen with this issue, knew right where to look. The unit is under warranty, and so I will be getting a replacement. Sharp assures me the new unit is free of any issue, which means

---

[14] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (last accessed June 26, 2019).

[15] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_getr_d_paging_btm_next_9?sortBy=recent&pageNumber=9 (last accessed Dec. 27, 2018).

they know of this. No other manufacturers make a drawer microwave (all use Sharp as the base model). I am stuck as the cabinet was built for this unit.

92. In June of 2018, another consumer reported:[16]

Yesterday morning when heating oatmeal (which I do almost every morning) the microwave started making a loud electrical zapping noise followed immediately by a huge amount of white smoke coming out of the front upper area just below the control panel. I immediately turned it off, opened the drawer and removed my food. Have not tried to use it again for fear of starting another fire. From my research here with other reviews as well as Houzz this appears to be a known issue at Sharp for this microwave model manufactured in the 2016 time frame. I purchased this unit in April 2016 and my Manufactured Date is Jan. 2016.

I have reached out to Sharp via their online customer support center and will update this review as my claim progresses.

26JUN2018 Update: After contacting Sharp as mentioned above, I was informed my unit is outside of the 1 year warranty period and there is nothing they will do for me ("so you will be held responsible for the cost of repairs for the unit"). They could not provide me with an "Authorized" service/repair company in my area either. After pushing back saying that since this is a "known issue" at Sharp was there any way I can know that if I have the unit repaired at my own expense (which I am willing to do), that the part(s) used would not have the same defect and cause the same issue. I was told to have "the servicer look at the unit and its deemed unrepairable you can have the servicer send in photos along with an evaluation for further options".

I really don't know what "further options" there might be at this point as Sharp does not appear to be interested in helping me here.

---

[16] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (last accessed June 26, 2019).

93. Similarly, numerous consumers have reported that the Microwaves are not heating their food, as they should. This is a result of the Microwaves failure to operate at the represented 950 watts.[17]

94. In conjunction with Sharp's experience designing, manufacturing, and selling the Microwaves, these facts and complaints illustrate that Sharp knew or should have known of the defect for years; yet, continued to place the Microwaves into the stream of commerce and induce consumers into purchasing out-of-warranty replacements and extended warranties.

95. Sharp has a duty to disclose the defect and to not conceal the defect from Plaintiffs and Class Members. Sharp's failure to disclose, or active concealment of, the serious safety defect places Plaintiffs and Class members at risk of personal injury and/or property damage.

96. Sharp is currently still selling the defective Microwaves, concealing the defect, failing to notify consumers of the safety defect, and failing to recall the Microwaves.

97. Moreover, Sharp continues to falsely represent through written warranties that the Microwaves are free from defect, are of merchantable quality, and will perform dependably for years.

98. When corresponding with customers, Sharp does not disclose that the Microwaves suffer from the defect. As a result, reasonable consumers, including Plaintiffs and Class members, purchased and used, and continue to purchase and use, the Microwaves in their homes even though it is unsafe to do so.

---

[17] https://www.amazon.com/Sharp-KB-6524PS-24-Inch-Microwave-Stainless/product-reviews/B001QFYDSI/ref=cm_cr_arp_d_hist_1?filterByStar=one_star&pageNumber=1 (Las Accessed July 5, 2019).

99.     When Sharp replaces units, it fails to disclose known defects and it replaces the defective Microwaves with equally defective Microwaves. Some consumers, including Plaintiff Wittman, have received replacement Microwaves, which have failed or will fail in the same manner.

100.    Had Plaintiffs, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Microwaves.

101.    Sharp has wrongfully placed on Plaintiffs and Class members the burden, expense, and difficulty involved in discovering the defect, repairing and replacing the Microwaves (potentially multiple times), and paying for the cost of damages caused by the defect.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

102.    Sharp had actual awareness for years that the Microwaves contain a defect that causes the magnetron to overheat, components of the unit to burn, smoke, and prematurely fail.

103.    Although Sharp was aware of the dangerous defect, it took no steps to warn Plaintiffs or the Class of such defect and the dangers the defect would pose.

104.    At least by 2015, if not earlier, Sharp had received numerous reports from consumers of incidents of loud noises, foul odors, smoke, and fire associated with the Microwaves.

105.    Sharp has purportedly changed its manufacturing process in its attempt to correct the problem for newly manufactured Sharp-branded microwave ovens, without notifying consumers of these changes.

106. Sharp did not, however, issue a recall, warn consumers, or take any other affirmative steps to correct the problem in the Microwaves already in the field with the defective magnetron, nor did Sharp take steps to alert members of the Class about the problem.

107. Despite its knowledge, Sharp concealed the fact that the Microwaves were defective, even though it had a duty to disclose the defect.

108. Sharp made affirmative misrepresentations to consumers during the sale of the Microwaves, including that the Microwaves were free of defects and that the Microwaves would be repaired or replaced within the first five (5) years after purchase if the magnetron tube failed to operate.

109. In fact, Sharp's Warranty provides:

> One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period.

110. Sharp made affirmative misrepresentations to Plaintiffs and consumers during warranty claims and other correspondence with consumers lodging complaints, including that their Microwave failures were anomalous; problems with the Microwaves have been resolved; Microwaves more than one (1) year old were out of warranty; and in other ways to be discovered.

111. At all times, Sharp concealed that the Microwaves and any replacements were defective.

112. Sharp's concealment was material to Plaintiffs and Class Members' decision to purchase the Microwaves. Sharp's concealment was knowing, and Sharp intended to mislead Plaintiffs and Class Members into relying on it. Accordingly, Plaintiffs and Class Members relied

on Sharp's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

113. The defect in the design and/or manufacture of the Microwaves was not detectible to Plaintiffs and members of the Class.

114. Sharp actively and intentionally concealed the defect and failed to inform Plaintiffs or Class Members of the defect at all times, including when they contacted Sharp about the problems. Accordingly, Plaintiffs' and Class Members' lack of awareness was not attributable to lack of diligence on their part.

115. Sharp's statements, words, and acts were made for the purpose of suppressing the truth that the Microwaves, including the replacement Microwaves, were defective.

116. Sharp concealed the defect for the purpose of delaying Plaintiffs and Class Members from filing a complaint on their causes of action.

117. As a result of Sharp's active concealment of the defect and/or failure to inform Plaintiffs and members of the Class of the defect, any and all applicable statutes of limitations have been tolled. Furthermore, Sharp is estopped from relying on any statutes of limitations due to its active concealment of the defect.

## CLASS ACTION ALLEGATIONS

118. Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> All persons residing in the State of Ohio who purchased a Sharp Microwave Drawer, including model numbers SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS.

119.    Plaintiffs reserve the right to modify the class definition if necessary to include additional Sharp Microwave Drawer models with the same defect and/or other Microwave Drawers manufactured by Sharp with the common defect but bearing different brand names.

120.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, it consists of thousands of people geographically disbursed throughout Ohio. The number of Class members can be determined by sales information and other records. Moreover, joinder of all potential Class members is not practicable given their numbers and geographic diversity. The Class is readily   identifiable from information and records in the possession of Sharp and its third-party distributors.

121.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class Members because Sharp has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

(a)    Whether the Microwaves are defective, and whether such defect is a safety hazard;

(b)    Whether the Microwaves are defectively designed and/or manufactured;

(c)    Whether Sharp knew or reasonably should have known about the defect prior to distributing the Microwaves to Plaintiffs and the Class;

(d)    Whether Sharp concealed from and/or failed to disclose to Plaintiffs and the Class the problems with the Microwaves;

(e)    Whether Sharp knew or reasonably should have known about the defect after distributing the Microwaves to Plaintiffs and the Class;

(f)    Whether Sharp breached express and implied warranties relating to the Microwaves;

27

(g)  Whether Sharp was unjustly enriched by receiving moneys in exchange for Microwaves that were defective;

(h)  Whether Sharp should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Microwaves;

(i)  Whether Plaintiffs and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(j)  Whether Sharp should be enjoined from selling and marketing its defective Microwaves;

(k)  Whether Sharp engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Microwaves; and

(l)  Whether Sharp negligently designed or manufactured the defective Microwaves.

122.  Typicality:  Plaintiffs' claims are typical of the members of the Class as all members of the Class are similarly affected by the same defect and Sharp's actionable conduct. Plaintiffs and all members of the Class purchased the Microwaves with a defect that makes the Microwaves inherently dangerous. In addition, Sharp's conduct that gave rise to the claims of Plaintiffs and members of the Class (*i.e.* delivering a defective microwave drawer, concealing the defect, and breaching warranties respecting the microwave drawer) is the same for all members of the Class.

123.  Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of the Class because they have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

124.  Injunctive/Declaratory Relief: The elements of Rule 23(b)(2) are met. Sharp will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defect. Sharp has acted and refused to act

28

on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

125.    Predominance: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated Plaintiffs.

126.    Plaintiffs know of no difficulty to be encountered in the maintenance of this  action that would preclude its maintenance as a class action.

127.    Sharp has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief  with respect to the Class as a whole.

**Count 1: Breach of Express Warranty**
**(Ohio Rev. Code Ann. § 1302.26)**
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

128.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

129.    In connection with its sale of the Microwaves, Sharp expressly warranted that they were free from defects and suitable for heating food.

130.    The Consumer Limited Warranty states that in accordance with such warranty,

Sharp, "agrees that it will, at its option, either repair the defect or replace the defective Product or part thereof with a new or remanufactured equivalent at no charge to the purchaser for parts or labor for the period(s) set forth below."

131. Further, the warranty period for the Microwaves is: "One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period."

132. The defectively designed and/or manufactured Microwaves are subject to and otherwise covered by Sharp's Consumer Limited Warranty.

133. Each of the Microwave models has an identical or substantially identical warranty.

134. Plaintiffs and the Class Members have privity of contract with Sharp through their purchase of the Microwaves, and through the express written and implied warranties that Sharp issued to its customers. Sharp's warranties accompanied the Microwaves and were intended to benefit end-users of the Microwaves. To the extent Class Members purchased the Microwaves from third-party retailers or via the purchase of their homes, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Sharp and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Microwaves.

135. The express written warranties covering the Microwaves were a material part of the bargain between Sharp and consumers. At the time it made these express warranties, Sharp knew of the purpose for which Microwaves were to be used.

136. Sharp breached its express warranties by selling Microwaves that were, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, unsafe for use, and could not be used for the ordinary purpose of heating food. Sharp breached its express written warranties to Plaintiffs and Class Members in that the Microwaves are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

137. Microwaves that the Plaintiffs and Class Members purchased contained a defect that caused each of them damages including loss of the product, loss of the benefit of their bargain, and property damage.

138. Plaintiffs and Class Members notified Sharp of its breach of the express warranty shortly after their Microwaves failed to perform as warranted due to the defect.

139. Moreover, Sharp was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

140. Sharp breached its express warranty to adequately repair or replace the Microwave despite its knowledge of the defect, and/or despite its knowledge of alternative designs, manufacture, materials, and/or options for manufacturing the Microwaves.

141. To the extent that Sharp offered to replace the defective Microwaves, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiffs and Class Members whole. Specifically, Sharp often opts to provide a replacement Microwave; however, the replacement Microwave likewise contains the defect, resulting in the same safety risks to the owners, and the same or similar damages occur to the replacement and the owner's personal

property.

142.    Further, the repair or replacement under the Consumer Limited Warranty does not apply to all Microwaves—it necessarily only applies to the Microwaves that have manifested the latent defect and have already failed. The warranty of repair or replacement of failed Microwaves is insufficient to adequately cover all defective Microwaves, or cannot do so within the time period under either the one-year or five-year warranty periods, or within the reasonable expected service life of a microwave at ten (10) years.

143.    Many of the damages resulting from the defective Microwaves cannot be resolved through the limited remedy of replacement, as incidental and consequential damages have already been suffered due to Sharp's conduct as alleged herein.

144.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

145.    Upon information and belief, Sharp received further notice and has been on notice of the defective nature of the Microwaves and of its breaches of warranties through customer warranty claims reporting problems with Sharp, consumer complaints at various sources, and its own internal and external testing. Sharp also received such notice through Plaintiffs, who on numerous occasions, complained to Sharp about the defective Microwave and resulting damage.

146.    Despite having notice and knowledge of the defective nature of the Microwaves, Sharp failed to provide any relief to Class Members with Microwaves more than one (1) year old, failed to provide a non-defective replacement Microwave to Plaintiffs and Class Members, and otherwise failed to offer any appropriate compensation from the resulting damages.

147.    Had Plaintiffs, Class Members, and the consuming public known that the

32

Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, would cause damage, or that Sharp would not properly honor its warranty, they would not have purchased the Microwaves.

148.  As a direct and proximate result of Sharp's breach of its express written warranties, Plaintiffs and Class Members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the defective Microwaves, in addition to loss of the product and its intended benefits.

**Count 2: Breach of Implied Warranties**
**(Ohio Rev. Code Ann. § 1302.27)**
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

149.  Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

150.  Plaintiffs bring this cause of action individually and on behalf of the Class.

151.  Sharp was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Microwaves. Sharp knew or had reason to know of the specific use for which the Microwaves were purchased.

152.  Sharp provided Plaintiffs and Class Members with implied warranties that the Microwaves were merchantable and fit for the ordinary purposes for which they were sold.

153.  Plaintiffs have privity of contract with Sharp through the purchase of the Microwaves, and through the express written and implied warranties that Sharp issued to Plaintiffs. Sharp's warranty accompanied the Microwaves and was expressly intended to benefit consumers of the Microwaves, including Plaintiffs. Further, privity is not required because Plaintiffs are intended third-party beneficiaries of the contract between Sharp and third-party retailers.

154.    The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. Sharp provided Plaintiffs and Class Members with the implied warranties that the Microwaves were merchantable and fit for the ordinary purposes for which they were sold.

155.    However, the Microwaves are not fit for their ordinary purpose of providing reasonably reliable and safe heating of food because, *inter alia*, the Microwaves contained a defect preventing the Microwaves from safely heating food without electrical arcing, smoking, melting the magnetron tube and potentially catching fire, as well as preventing the Microwaves from cooking food at the represented wattage. Therefore, the Microwaves are not fit for their particular purpose of safely heating and/or cooking food.

156.    The problems associated with the defect, such as electrical arcing, smoking, melting the magnetron tube and potentially catching fire are safety risks such that the Microwaves do not provide safe reliable cooking appliances, and therefore, Sharp has breached the implied warranty of merchantability. These problems are exacerbated by Sharp's failure to design and/or implement a safety function that will shut the Microwaves off in the event of arcing.

157.    Sharp implicitly warranted that the Microwaves were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Microwaves were manufactured, supplied, distributed, and/or sold by Sharp were safe and reliable for heating food; and (ii) a warranty that the Microwaves would be fit for their intended use during operation.

158.    Contrary to the applicable implied warranties, the Microwaves, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe methods of heating food. Instead, the Microwaves suffer from a defective design and/or manufacture, as alleged herein.

159.    As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**Count 3: Breach of Contract**
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

160.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

161.    To the extent Sharp's commitment is deemed not to be a warranty under Ohio's Uniform Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.

162.    Plaintiffs and Class Members purchased the Microwaves from Sharp or through retailers such as Home Depot, Lowe's, Amazon, and other appliance stores.

163.    Sharp expressly warranted that the Microwaves were fit for their intended purpose and that they were free of defects, suitable for safe heating of food, and the Microwaves would operate at 950 watts when they were heating food.

164.    Sharp highlights this purported wattage in the descriptions of the Microwaves and in specification sheets available through its website. As wattage is directly correlated to the price of a microwave, this express representation was material to Plaintiffs, consumers, and their agents when selecting the high-end Microwaves for their kitchens.

165.    Sharp made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiffs, Class Members, and Sharp.

166.    Defendant breached the warranties and/or contract obligations by placing the defective Microwaves into the stream of commerce and selling them to consumers, when they knew the Microwaves contained defects, were prone to premature failure, did not safely heat food, and did not actually operate at 950 watts. The Microwaves operate at less than 950 watts, which means they are slower and less efficient heating food when compared to other microwaves that are advertised as operating at 950 watts and actually do operate at 950 watts. These deficiencies substantially and/or completely impair the use and value of the Microwaves.

167.    The defects and deficiencies described existed when the Microwaves left Sharp's possession or control and when they were sold to Plaintiffs and Class Members. The deficiencies and impairment of the use and value of the Microwaves was not discoverable by Plaintiffs or Class Members at the time of the purchase of the Microwaves.

168.    As a direct and proximate cause of Sharp's breach of contract, Plaintiffs and Class Members were harmed because they would not have purchased the Microwaves if they had known the truth about the defective and deficient condition of the Microwaves.

**Count 4: Strict Products Liability – Defective Design & Manufacture**
**(Ohio Rev. Code Ann. § 2307.75)**
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

169.    Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

170.    Sharp designed, manufactured, and sold the Microwaves and is a "manufacturer" as defined by Ohio Rev. Code Ann. § 2307.71(A)(9).

171.    When they left the control of Sharp, the Microwaves were expected to and did

reach Plaintiffs and Class Members without substantial change from the condition in which they left Sharp's control.

172. The Microwaves were defective when they left Sharp's control and were placed in the stream of commerce, in that there were foreseeable defects in the design and/or manufacture of the product.

173. The Microwaves were in an unreasonably dangerous condition at the time they left Sharp's control and were placed in the stream of commerce, and at the time they were purchased by Plaintiffs and Class Members.

174. The Microwaves were unfit for their intended use, and in a defective condition which caused the product to buzz, smoke, and scorch the back panel of the Microwaves, causing damages to the Microwaves and to other property in Plaintiffs' home, including smoke damage to cabinetry, kitchen islands, and other portions of the kitchen, as well as damaging the food intended to have been cooked.

175. Plaintiffs and the Class Members used the Microwaves in substantially the same condition they were in when they left the control of Sharp and were used in the manner intended.

176. Had Sharp altered its design and manufacturing process utilizing viable alternatives, the Microwaves would not buzz, smoke, catch fire, and cause damage to the Microwaves, loss of meals, and smoke damage to Plaintiffs' and Class Members' homes and personal property.

177. Better and safer methods of design and manufacturing of microwave oven drawers were available and utilized by other manufacturers in the same industry.

178. The negligible additional costs of designing and/or manufacturing a microwave

without these defects is far outweighed by the harm in the form of property damage and a defective product that does not perform its intended functions and is unreasonably dangerous for consumers to operate.

179.    As a result of the Microwaves' defective design and/or manufacture, Plaintiffs have suffered damages which constitutes "harm" as defined by Ohio Rev. Code Ann. § 2307.71(A)(7).

180.    As a direct and proximate result of Sharp's defective design and/or manufacture of the Microwaves, Plaintiffs and Class Members suffered damages and economic loss as set forth herein.

181.    Sharp is strictly liable to Plaintiffs and Class Members for the harm caused by the nonconformity as set forth above pursuant to Ohio Rev. Code Ann. § 2307.77. Sharp is also strictly liable for additional compensatory and economic loss pursuant to Ohio Rev. Code Ann. § 2307.79.

182.    As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**Count 5: Failure to Warn**
**(Ohio Rev. Code Ann. § 2307.76)**
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

183.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

184.    Sharp designed, manufactured, and sold the Microwaves and is a "manufacturer" as defined by Ohio Rev. Code Ann. § 2307.71(A)(9).

185.    At the time they left Sharp's control, the Microwaves were defectively designed

38

and/or manufactured as outlined above.

186. Sharp knew, or in the exercise of reasonable care should have known, that the Microwaves were likely to experience uncontrolled electromagnetic waves and arcing, resulting in the overheating, destruction, and burning of various components as set forth above, damaging the Microwave, food, and other property, including smoke damage to kitchen cabinetry.

187. Sharp nonetheless failed to provide a warning at the time of purchase or in post-sale communications regarding the defect or instructions on how to avoid it. A manufacturer of an electrical kitchen appliance would, in the exercise of reasonable care, have provided such a warning or instruction. The defect in the Microwaves is a serious safety hazard and renders the Microwaves useless for their intended purpose of heating food.

188. As a result of Sharp's failure to provide adequate warning or instruction about the Microwaves, Plaintiffs have suffered damages which constitute "harm" as defined by Ohio Rev. Code Ann. § 2307.71(A)(7).

189. Sharp is strictly liable for the harm caused by the nonconformity as set forth above pursuant to Ohio Rev. Code Ann. § 2307.77. Sharp is also strictly liable for additional compensatory and economic loss pursuant to Ohio Rev. Code Ann. § 2307.79.

190. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### Count 6: Failure to Conform to a Representation
### (Ohio Rev. Code Ann. § 2307.77)
### (Plaintiffs Individually and Behalf of All Others Similarly Situated)

191. Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

192.     Sharp designed, manufactured, and sold the Microwaves and is a "manufacturer" as defined by Ohio Rev. Code Ann. § 2307.71(A)(9).

193.     Sharp made numerous representations, described herein, including *inter alia* that the Microwaves were free from defects, made with quality materials, operated at 950 watts, and are a superior product for heating food.

194.     However, the Microwaves purchased by Plaintiffs and Class Members failed to conform to representations made by Sharp due to the defective condition that caused the Microwaves to buzz from electrical arcing, overheat and burn the components, smoke, and cause damage to the Microwaves and other property in the Plaintiffs' homes.

195.     Sharp highlights that the Microwaves operate at 950 watts in the descriptions of the Microwaves and in specification sheets available through its website. As wattage is directly correlated to the price of a microwave, this express representation was material to Plaintiffs, consumers, and their agents when selecting the high-end Microwaves for their kitchens. However, the Microwaves fail to conform to their representation that they operate at 950 watts when they actually operate at a wattage that is far less than 950 watts.

196.     As a result of the failure of the Microwaves to conform to the Sharp's representations, Plaintiffs have suffered damages which constitute "harm" as defined by Ohio Rev. Code Ann. § 2307.71(A)(7).

197.     Based on all of the foregoing, Sharp has violated Ohio Rev. Code Ann. § 2307.77, and as a direct and proximate result, Plaintiffs and Class Members have suffered damages, including not receiving the value of the product they purchased, loss of the Microwaves, damage to other property from loss of meals and smoke damage.

**Count 7: Violation of the Ohio Consumer Sales Practices Act**
**(Ohio Rev. Code Ann. ch. 1345)**
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

198.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding

Paragraphs into this cause of action and claim for relief as if fully set forth herein.

199.    At all times relevant hereto, the Ohio Consumer Sales Practice Act, Ohio Rev.

Code ch. 1345 ("OCSPA"), was in full force and effect.

200.    The conduct described herein took place within the State of Ohio and constitutes

deceptive acts and practices, which were directed at consumers.

201.    Plaintiffs and other Class Members may sue as consumers within the meaning of

the OCSPA because Sharp's business activities involve trade or commerce, are addressed to the

market generally, and otherwise implicate consumer protection concerns.

202.    OCSPA § 13445.02 states, "No supplier shall commit an unfair or deceptive act or

practice in connection with a consumer transaction. Such unfair or deceptive act or practice

violates this section whether it occurs before, during, or after the transaction."

203.    When Sharp designed, developed, manufactured, marketed, and sold the

Microwaves, as well as when it had post-sale communications with Plaintiffs and consumers who

reported problems with the Microwaves, Sharp was involved in the conduct of consumer

transactions that are covered under the OCSPA.

204.    Consistent with the actual language of Sharp's Warranty, as well as with the

purpose and intended beneficiaries of the Microwaves (e.g. the homeowners/users), Sharp

assigned or transferred the services and benefits arising under its warranty to Plaintiffs and Class

Members upon their acquisition of the Microwaves or homes where the Microwaves were

installed.

205.   As the Microwaves are installed in the kitchens of personal residences, Plaintiffs and Class Members acquired the Microwaves primarily for personal, family, or household purposes.

206.   Sharp's descriptions and advertisements of the Microwaves were deceptive, false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

207.   More specifically, Sharp engaged in unfair and deceptive trade practices through the following conduct:

a.   Failing to honor its express warranty;

b.   Having extensive knowledge of the defective nature of the Microwaves and failing to disclose to Plaintiffs and Class Members both at the time of sale and later when consumers made complaints;

c.   Representing the Microwaves operate at 950 watts, when they actually operate at a lower wattage;

d.   Representing that the Microwaves were suitable for safely heating food, when they were not;

e.   Representing "SHARP ELECTRONICS CORPORATION warrants to the first consumer purchaser that this Sharp brand product (the "Product"), when shipped in its original container, will be free from defective workmanship and materials";

f.   Conveying a Warranty with the sale of its Microwaves when it does not intend to honor the Warranty, or even investigate Warranty claims to determine the proper course;

g.   Selling Microwaves with a latent defect that does not manifest until after the terms of the Warranty;

h.   Representing that the Microwaves offer "Cooking Performance You Can Trust";

i.   Representing the Microwaves offer "COOKING PERFORMANCE FROM ONE OF THE MOST TRUSTED BRANDS IN MICROWAVES";

j.   Representing "Sharp has been innovating microwave cooking for decades and holds eleven patents on the Microwave Drawer alone. You can trust that the

Microwave Drawer will deliver the performance you need because it is engineered for great cooking results and is built with the finest quality materials";

k.    Representing that "Sharp has been innovating microwave cooking for decades and holds 11 patents on the Microwave Drawer platform alone. Engineered for consistency and built with the finest quality materials, great cooks trust the Microwave Drawer to deliver great results every time";

l.    Representing that "The Sharp Microwave Drawer Oven has been designed to complement the widest range of kitchen styles and appliances. The sleek low profile design and a stainless steel finish beautifully compliment any kitchen";

m.    In failing to disclose to the Plaintiffs and Class Members that the Microwaves:

(i) were defective;

(ii) were not suitable for heating food,

(iii) would prematurely fail;

(iv) cannot be expected to fulfill their service life;

(v) would cause damage to other property; and

(vi) would pose a fire and safety hazard to Plaintiffs and Class Members.

208.    Post-sale, Sharp's representations that the defect had been fixed, the replacements were free of defects, the problems were anomalous, and in other ways described herein were also deceptive, false, misleading and likely to deceive Plaintiffs and other reasonable consumers.

209.    Sharp further fails to honor express Consumer Limited Warranty by denying claims that are outside of the one (1) year parts and labor warranty when the magnetron is subject to a five (5) year warranty; replacing Microwaves with similarly defective Microwaves; charging undisclosed fees; and adding undisclosed conditions in order to receive a replacement under the terms of the Warranty, including signing waivers of legal rights.

210.    Sharp's foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the safety, durability, and

functionality of the Microwaves. Sharp, when it marketed, advertised and sold the Microwaves, represented to Plaintiffs and Class Members that the Microwaves were free of defects, despite that the Microwaves were defective and prone to failure. The defective condition was a material fact that Sharp omitted during its packaging, sale, and subsequent warranty communications with Plaintiffs and Class Members.

211.    Further Sharp's foregoing deceptive acts and practices, including their omissions, were material when inducing consumers to purchase out-of-warranty replacement microwaves, accept danger replacement microwave that were in-warranty, purchase extended warranties, and sign releases and waivers.

212.    Rather than disclose its knowledge of defects, Sharp engaged in and continued a widespread uniform, marketing, and advertising campaign that misrepresented the Microwaves came with a Consumer Limited Warranty that would be honored, and otherwise that the Microwaves were free of defects and suitable for safe heating of food.

213.    Sharp was on prior notice that its conduct was deceptive and unconscionable by prior court decisions in this state.

214.    Sharp's conduct caused actual confusion and actual misunderstanding with Plaintiffs and Class Members, in that they believed they were purchasing and installing Microwaves that were free of defects; capable of operating at 950 watts; suitable for heating food; of high quality; would not prematurely fail; were not a safety hazard; and came with a Warranty that the Defendant would honor.

215.    Sharp's conduct caused actual confusion and misunderstanding when Plaintiff Wittman and consumers purchased or accepted defective replacement Microwaves, purchased

44

extended warranties, and otherwise signed release and waivers.

216. Plaintiffs and the Class Members suffered damages when they purchased the Microwaves and during post-sale transactions as described herein. Sharp's unconscionable, deceptive and/or unfair practices caused damages to Plaintiffs and Class Members who were unaware that the Microwaves contained inherent defects and were prone to premature failure.

217. As a direct and proximate consequence of Defendant's improper conduct, the Plaintiffs and Class Members were injured, including not receiving the value of the product they purchased, loss of the Microwaves, damage to other property from loss of meals and smoke damage.

## Count 8: Negligence
### (Plaintiffs Individually and Behalf of All Others Similarly Situated)

218. Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

219. At all times material hereto, Sharp designed and manufactured the Microwaves.

220. Sharp had a duty to Plaintiffs and to Class Members to design and manufacture Microwaves that were free of latent defects, which would not overheat the magnetron, scorch the back of the unit, cause damage to the food being cooked, cause smoke damage to other parts of the home, including kitchen islands and cabinetry, and that presents serious safety risks as a result of a malfunctioning electrical appliance.

221. Sharp had a duty to design and manufacture the Microwaves such that there was a mechanism to prevent arcing, or otherwise prevent the Microwave from further functioning and overheating the magnetron once arcing occurred.

222. Sharp had a duty to Plaintiffs and to Class Members to test the Microwaves to

ensure adequate performance of the Microwaves for a reasonable period of use, and to ensure they would not be subject to premature failure or would cause damage to food or smoke damage to the home.

223.    Sharp had a duty to Plaintiffs and to Class Members to ensure that the magnetron tube, waveguide, and other components were suitable and safe for their intended use, either by testing or by verifying third-party test results.

224.    Sharp had a duty to Plaintiffs and to Class Members to ensure that the Microwaves complied with industry standards, testing, and safety guidelines.

225.    Sharp had a duty to Plaintiffs and Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

226.    Sharp failed to exercise ordinary and reasonable care in the design and manufacture of the Microwaves and in determining whether the Microwaves that it sold, and continued to sell, contained a latent defect that would result in the failure of the Microwaves to perform as reasonably expected.

227.    Sharp failed to exercise ordinary and reasonable care in the design and manufacture of the Microwaves and breached the foregoing duties.

228.    Sharp breached its duty to the Plaintiffs and Class Members to test the Microwaves to ensure adequate performance of the Microwaves for a reasonable period of use.

229.    Sharp breached its duty to Plaintiffs and to Class Members to ensure that the Microwave components were suitable, either by testing or by verifying third-party test results.

230.    Sharp breached its duty to Plaintiffs and to Class Members to ensure that the Microwaves complied with industry standards, safety guidelines, and testing standards.

231.    Sharp breached its duty to Plaintiffs and to Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

232.    The negligence of Sharp, its agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

(a)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Microwaves without adequately and thoroughly testing them to all applicable standards and safety guidelines;

(b)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Microwaves without adequately testing long term performance;

(c)    negligently failing to ensure that the Microwaves conformed to all applicable industry standards, safety guidelines, and testing standards; and

(d)    concealing information concerning the defect inherent in the Microwaves from Plaintiffs and the Class Members, while knowing that Sharp's Microwaves were defective and non-conforming with accepted industry standards and safety guidelines.

233.    Plaintiffs and the Class Members have been damaged because the defective Microwaves do not perform the ordinary purpose of heating food safely.

234.    Plaintiffs and Class Members have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wanton behavior of Sharp as aforesaid, including, but not limited to, damage to the Product, loss of the food being cooked, smoke damage to kitchen islands and cabinetry, damage to the cabinetry during replacement, and safety risks.

235.    As Sharp's conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiffs and Class Members are entitled to an award of punitive damages against Sharp.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

- Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

- Name Plaintiffs as Class Representatives and their counsel as Class Counsel;

- Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

- Grant restitution to Plaintiffs and the Class and require Sharp to disgorge its ill-gotten gains;

- Permanently enjoin Sharp Electronics Corporation from engaging in the wrongful and unlawful conduct alleged herein;

- Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

- Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

- Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: July 26, 2019          Respectfully submitted,

         /s/ William F. Cash III
         William F. Cash III (Ohio Bar No. 84482)
         *Lead Trial Attorney*
         **LEVIN, PAPANTONIO, THOMAS,**
         **MITCHELL, RAFFERTY & PROCTOR, P.A.**
         316 South Baylen Street, Suite 600
         Pensacola, Florida 32502
         Phone: 850-435-7059
         bcash@levinlaw.com

Gregory F. Coleman*
Rachel Soffin*
Lisa A. White*
Adam A. Edwards*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
lisa@gregcolemanlaw.com
adam@gregcolemanlaw.com

Daniel K. Bryson*
Harper T. Segui*
**WHITFIELD BRYSON & MASON, LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
dan@wbmllp.com
harper@wbmllp.com

Jonathan K. Tycko
Hassan A. Zavareei*
Andrea Gold*
**TYCKO & ZAVAREEI LLP**
1828 L. Street, NW, Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
jtycko@tzlegal.com
hzavareei@tzlegal.com
agold@tzlegal.com

* Will seek admission *pro hac vice*

*Attorneys for Plaintiffs*